IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KRISTI J. ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 17-0339-MU |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kristi J. Anderson brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI"), based on disability, under Title XVI of the Act. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 21 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 23. Upon consideration of the administrative record, Anderson's brief, the Commissioner's brief, and the arguments made at the hearing on May 9, 2018

1

before the undersigned Magistrate Judge, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

## I. PROCEDURAL HISTORY

Anderson applied for DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, and for SSI, based on disability, under Title XVI of the Act, 42 U.S.C. §§ 1381-1383d, on August 12, 2014, alleging disability beginning on April 25, 2014. (Tr. 200, 207). Her application was denied at the initial level of administrative review on December 18, 2014. (Tr. 135-39). On December 29, 2014, Anderson requested a hearing by an Administrative Law Judge (ALJ). (Tr. 144). After a hearing was held on June 15, 2016, the ALJ issued an unfavorable decision finding that Anderson was not under a disability from the date the application was filed through the date of the decision, September 2, 2016. (Tr. 17-33). Anderson appealed the ALJ's decision to the Appeals Council, and, on June 21, 2017, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

After exhausting her administrative remedies, Anderson sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on November 2, 2017. (Docs. 12, 13). Both parties filed briefs setting forth their respective

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 21 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

positions. (Docs. 15, 16). Oral argument was held on May 9, 2018. (Doc. 22). The case is now ripe for decision.

## II.  CLAIM ON APPEAL

Anderson alleges that the ALJ's decision to deny her benefits is in error for the following reason:

1. The ALJ erred by failing to properly evaluate whether her impairment is of a severity to meet or equal Listing 12.05B. (Doc. 15 at p. 1).

## III. BACKGROUND FACTS

Anderson was born on May 3, 1967, and was 47 years old at the time she filed her claim for benefits. (Tr. 200). Anderson initially alleged disability due to back problems, hearing loss in her left ear, hand problems, depression, insomnia, and restless leg syndrome. (Tr. 235). At the hearing, in addition to these limitations, she also alleged that tendonitis in her hip and being slow, mentally and physically, keep her from being able to work. (Tr. 52). Anderson graduated from high school with a regular diploma in 1985, but was in special education classes in some subjects. (Tr. 44, 236). At the time she filed her application, she was working part-time at a fast food restaurant as a cook, but she was terminated from that employment between the date of filing her application and testifying at the hearing before the ALJ. (Tr. 45-46, 236-37). She has previously worked at fast food restaurants as a cook and stocker, at carnivals as a game booth and ride attendant, and at Dollar Tree as a stocker. (Tr. 46-52). At the time of the hearing, Anderson was living with and taking care of her husband who had stage four cancer. (Tr. 40-42). Anderson handles her

own personal care, she cooks several times per week for herself and her husband, she does household chores, she helps her husband get up and assists him walking, she walks to the grocery story about two miles from her apartment and back with her husband just about every morning, and she pays bills with her husband. (Tr. 41-43, 67-69). She does not have a driver's license because no one has ever taught her to drive and she doesn't have a car. (Tr. 42-43). She enjoys seek and find books, reading her Bible, and attending and volunteering at her church. (Tr. 69, 71). She testified that the only problem she has getting along with people is when they nag her and that she has no problems maintaining attention or following directions. (Tr. 70-71). She further testified that other than getting irritated with people who nag, there are no other ways her mental issues keep her from being able to work. (Tr. 71). After conducting the hearing, the ALJ made a determination that Anderson had not been under a disability during the relevant time period, and thus, was not entitled to benefits. (Tr. 17-31).

## IV. ALJ'S DECISION

After considering all of the evidence, the ALJ made the following findings that are relevant to the issues presented in his November 2, 2016 decision:

**3. The claimant has the following severe impairments: borderline intellectual functioning, affective disorder, back pain, chronic pain syndrome, and hearing loss in the left ear (20 CFR 414.1520(c) and 416.920(c)).**

\* \* \*

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and**

4

**416.926).**

* * *

> Listing 12.05 is not met. While a full scale IQ of 57 was assessed by a psychological evaluation performed in 2012, there is no indication in the document it was deemed a valid score. 1F. Importantly, that examiner opined the claimant could do simple type work like "restaurant work" or "cleaning and laundry." 1F. Another psychological evaluation was performed in 2013 and found a full scale IQ of 64. 13F. The provider noted that the claimant reported a history of special education classes. However, the claimant testified she graduated with a regular diploma. While the claimant has an IQ between 60 and 70, she has not established deficits in adaptive functioning sufficient to meet listing 12.05. She reportedly doesn't drive, but can handle finances, worked, takes care of her husband who has cancer and is on disability, cleans the house, and reads. She walks four miles to the store, picks her husband up and carries him around, and volunteers at her church. She has worked with money at her previous jobs with the carnival. She lived by herself before she was married, can use public transportation, and is going to attempt to learn to drive when her and her husband get a vehicle. The evidence supports a finding that listing 12.05 has not been met.

(Tr. 23).

## V. DISCUSSION

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work

5

that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In evaluating whether a claimant is disabled, the ALJ utilizes a five-step sequential evaluation:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The steps are to be followed in order, and if it is determined that the claimant is disabled at a step of the evaluation process, the evaluation does not proceed to the next step.

If the claimant appeals an unfavorable ALJ decision, the reviewing court has a narrow scope of review. That court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Anderson asserts that the ALJ's summary dismissal of her documented full-scale IQ score of 57 because "there is no indication in the document that it was deemed a valid score," Tr. 23, was reversible error. (Doc. 15 at p. 2). The Commissioner argues that the ALJ did not err because Anderson did not establish that she met all of the criteria required by Listing 12.05B. (Doc. 16 at pp. 3-4). Specifically, the Commissioner contends that the ALJ did not err because he correctly found that Anderson did not establish deficits in adaptive functioning sufficient to meet Listing 12.05. (*Id*.).

The Listings describe certain medical findings and other criteria that are considered so extreme as to be presumptively disabling. *See* 20 C.F.R §§ 404.1525, 416.925. To establish disability under a Listing, a claimant must have a diagnosis included in the Listing and must provide medical reports documenting that her condition satisfies the specific criteria of the listed

7

impairment. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); 20 C.F.R. §§ 404.1525(a-d), 416.925(a-d). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To "meet" Listing 12.05, the claimant must satisfy the diagnostic description in the introductory paragraph and one of four sets of diagnostic criteria found in paragraphs A, B, C, or D. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A). Listing 12.05's introductory paragraph requires the claimant to have: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) an onset of impairment before age 22. *Id*. at § 12.05. Although adaptive functioning is not defined in the regulations, the Eleventh Circuit has favorably cited the description of adaptive functioning in the Social Security Administration's Program Operations Manual System ("POMS") as "'the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age,'" as well as the statement in the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders that adaptive functioning means "'how well a person meets standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background. Adaptive functioning involves adaptive reasoning in three domains: conceptual, social, and practical.'" *Schrader v. Acting Comm'r of the Soc. Sec. Admin., 632 F. App'x 572,*

576 & n. 3-4 (11th Cir. 2015) (quoting Soc. Sec. Admin., Program Operations Manual System, DI 24515.056(D)(2) (2012) and DSM-V 37 (5th ed. 2013)).

If the claimant satisfies the three requirements in the introductory paragraph, the claimant must then satisfy one of the four criteria listed in 12.05A through 12.05D. The Listing relevant here is 12.05B. Under Listing 12.05B, the claimant must present evidence of a "valid verbal, performance, or full scale IQ of 59 or less." *Jackson v. Astrue*, Civ. A. No. 11-0121-M, 2011 WL 3757894, at *4 (S.D. Ala. Aug. 25, 2011) (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05B (2010)). "The Social Security Administration has noted that standardized intelligence tests can assist in verifying the presence of intellectual disability, but form only part of the overall assessment and should be considered in conjunction with developmental history and functional limitations." *Nichols v. Comm'r, Soc. Sec. Admin.,* 679 F. App'x 792, 795-96 (11th Cir. 2017) (citing § 12.05(D)(6)(a)). "[A]n ALJ may find, for purposes of Listing 12.05, that the results of an IQ test are incredible where the test results are inconsistent with the medical record or the claimant's daily activities and behavior." *Id.* at 796 (citing *Popp v. Heckler,* 779 F.2d 1497, 1499-1500 (11th Cir. 1986)). Even a valid IQ score is not necessarily conclusive of intellectual disability "'where the IQ score is inconsistent with other evidence in the record on the claimant's daily living activities and behavior.'" *Nichols,* 679 F. App'x at 796 (quoting *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)). In *Nichols,* the Eleventh Circuit concluded that the ALJ did not err in finding claimant's IQ score of 59 invalid where her range of activities and accomplishments, including reading and

9

understanding English, having a driver's license, completing high school with a certificate, having a history of some unskilled work, raising two children, and handling money, were inconsistent with the IQ results. 679 F. App'x at 796-97; *see also Branch v. Berryhill,* Civ. A. No. 16-0499-N, 2017 WL 1483534, at *4-6 (S.D. Ala. Apr. 25 2017) (finding that the ALJ did not err in finding that claimant's IQ score of 60 was invalid where, even though she was in special education classes through eighth grade (the highest grade completed) and could not functionally read, she could feed and take care of her pets, manage her own personal care, help her husband cook, watch television, wash clothes, go to the grocery store with her husband, talk to her daughter on the phone, and spend time on the computer).

Anderson was evaluated by psychologist Thomas S. Bennett, Ph. D. on November 14, 2012, at which time he administered the Weschler Adult Intelligence Scale, Fourth Edition (WAIS-IV). (Tr. 300-02). That test reflected that Anderson had a full-scale IQ score of 57, which placed her in the range of mild mental retardation. (Tr. 302). Dr. Bennett did not indicate in his report whether he found this to be a valid score. He did opine, after evaluating Anderson, as well as administering the testing, that she could "probably do some simple restaurant work" and "could probably do cleaning or laundry." (Tr. 301). Anderson was subsequently evaluated by psychologist Lucile T. Williams, Psy.D., on November 7, 2013. (Doc. 356-59). She administered the WAIS-IV to Anderson which revealed a full-scale IQ score of 64, and she assigned a diagnostic impression of mild mental retardation. (Tr. 359). Dr. Williams noted that she believed her

observations of Anderson to be "a valid estimate of her current level of intellectual functioning."

Based on the foregoing medical evidence, the ALJ rejected the IQ score of 57 because Anderson did not meet her burden of proving that it was a valid score and found that she had a valid IQ score between 60 and 70. (Tr. 23). Even assuming that the ALJ erred in rejecting the lower IQ score, the outcome of the case would be the same because the ALJ found that Anderson failed to "establish[] deficits in adaptive functioning sufficient to meet listing 12.05," which is a requirement under both 12.05B and 12.05C. The ALJ concluded that the record did not support a finding that Anderson has deficits in adaptive functioning sufficient to meet Listing 12.05. (Tr. 23). The ALJ noted that the record reflects that Anderson "doesn't drive, but can handle finances, worked, takes care of her husband who has cancer and is on disability, cleans the house, and reads. She walks four miles to the store, picks her husband up and carries him around, and volunteers at her church. She has worked with money at her previous jobs with the carnival. She lived by herself before she was married, can use public transportation, and is going to attempt to learn to drive when her and her husband get a vehicle." (Tr. 23). Anderson's testimony at the hearing before the ALJ supported these findings. (Tr. 39-76). This Court finds that this evidence constitutes substantial evidence in support of the ALJ's determination that Anderson did not establish that she has deficits in adaptive functioning sufficient to meet Listing 12.05B.

## **CONCLUSION**

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. The Court finds that the ALJ's Decision that Anderson is not entitled to benefits is supported by substantial evidence and based on proper legal standards. Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

    **DONE** and **ORDERED** this the **16th** day of **May, 2018**.

                      s/P. BRADLEY MURRAY
                        **UNITED STATES MAGISTRATE JUDGE**